Dorothea E. Donaldson, J.
Claimant contended that he was employed as manager for the 1963 horse show at the New York State Exposition held in Syracuse and conducted under the control and direction of the Department of Agriculture and Markets of the State of New York, and that such employment emanated from an oral contract for hire which the State of New York breached. Defendant responded that if a contract existed, expressly or impliedly, it violated the provisions of section 112 of the State Finance Law. In support of his contention, claimant relied upon section 31-c of the Agriculture and Markets Law.
At trial it was stipulated between the parties that claimant had had experience as manager for the horse show held in conjunction either with the New York State Exposition or for its predecessor, the New York State Fair, having worked as assistant manager from 1952 to 1956 and as manager for the years 1956 to 1962. All arrangements for these positions resulted from oral conversations between the claimant and the director of the horse show who received his authority from the director of the New York State Exposition. The director of the horse show received a token salary of $1 a year. For the services previously rendered by the claimant, he had received varying amounts from a minimum of $1,000 to a maximum of $2,000, the latter amount being paid to him in 1962 in one lump sum at the conclusion of that horse show. The horse show, operated during eight days of the exposition, was licensed by the American Horse Show Association with respect to dates, divisions and classes. In addition, in order to perfect a smoothly running *50 show, it was necessary to solicit contestants, exhibitors, to select judges, and to establish time schedules, requirements for divisions and classes, the type and number of assistants required to “ man ” the show, and other miscellaneous activities such as the nature and amount of prizes, the determination of the closing date for entries, the publishing and distribution of pertinent printed information. The manager also was required to attend, to supervise all these activities and to maintain an efficient operation during the days of the horse show.
At no time during his association with the events of the horse show of the State Exposition did claimant have a written contract for these services. As each new arrangement was made for his services, claimant expected to and did receive a lump sum payment at the conclusion of the exposition as he had received in each of the previous years. Since he had received $2,000 at the conclusion of the 1962 horse show, claimant contended that any arrangement for the 1963 show would be in an equal amount.
In December of 1962 the claimant talked to Richard O'. Chapman, the director of the horse show. The testimony indicated that following such conversation it was agreed that Mr. Conway was to manage the 1963 horse show, that he was to perform the duties hereinbefore mentioned and that prior to a deadline he was to submit to Mr. Chapman for his approval such information as a prize list, the divisions, the classes, the time schedules, the judges, etc. Claimant maintained that he had performed these services, that he solicited for exhibitors, over the telephone as well as other horse shows, that he discussed mailings of the prize list and that he was advertised as the manager of the 1963 horse show. On August 12, 1963, in conversation with the director of the horse show, claimant was advised that the director was not satisfied with his work, that he would not receive compensation in the amount of $2,000 but that if he concluded their arrangement by attending all of the days that the horse show was in operation at the exposition he would be given the total amount of $700. Claimant did not conclude the arrangement, did not attend the days of the horse show at the State Exposition, on the ground that the offer of one third of his previous salary was inadequate and, if accepted, would have indicated his acquiescence to an amount less than that agreed upon. There is no contention that the claimant was discharged; on the other hand, Mr. Chapman testified that he understood that the claimant was quitting for he advised Mr. Conway to submit a bill for the work done and that he, *51 Mr. Chapman, would see if it could he paid. No hill has ever been submitted by the claimant.
Defendant maintained that at no time was there any contract between the parties, either oral or written; that the claimant failed to execute most of the difficult work demanded by a well-run horse show and that the value of the services performed for which he might be compensated amounted to not more than $500. It is to be noted, parenthetically, that Mr. Chapman performed services as manager of the 1963 horse show and for such services, received the amount of $2,000. It was agreed that if claimant had satisfactorily fulfilled all the services requested he would have received the lump sum compensation of $2,000. Obviously, the exposition had set aside that amount in its budget as the value of the services of the horse show manager.
Since the operation of the New York State Exposition is a function under the direction and control of the Department of Agriculture and Markets of the State of New York, arrangements made by the policy personnel of the exposition are binding upon the State of New York. (Brockway v. State of New York, 158 Misc. 424, app. dsmd. 6 A D 2d 758.) The agreements between Mr. Conway and Mr. Chapman, although verbal, having been created annually since 1952, contain all the elements of a contractual relationship and had previously been so recognized. The only uncertain factor in the relationship was the value of the services rendered, payment for which had previously been made at the conclusion of their rendition. Since claimant failed to completely execute the provisions of the 1963 contract, any compensation to be received must be based upon the value of the services rendered to the date of the breach. Inasmuch as the agreement between the parties was not completely spelled out and was as loosely entered into as it was terminated, the breach thereof that was made by the defendant was equally made by the claimant.
Since, therefore, the claimant has the right to receive compensation for services rendered, it must be determined whether or not the amount for such services is properly a claim upon the defendant. Claimant’s reference to section 31-e of the Agriculture and Markets Law recites merely that moneys received or distributed by the State Fair or the State Exposition need not be paid into the State treasury and that disbursements may be made without the control required by section 121 of the State Finance Law. Section 31-c reads as follows: ‘ ‘ The department shall receive all moneys payable to the state on account of said exposition, and make all disbursements therefrom and *52 also from any appropriation made for that purpose by the legislature as may be needed, from time to time, in carrying on the work of the department. The provisions of section one hundred twenty-one of the state finance law requiring that money received for or on behalf of the state shall be paid monthly into the state treasury shall not apply to the proceeds of the state exposition, and the department may pay from the race and other entry fees, gate admissions and other receipts of such exposition such expenses as shall be necessary for the proper conduct of the New York state exposition and the purposes of the department.”
In contrast, section 112 of the State Finance Law prescribes the manner in which contracts shall be approved and specifically states, in part: “ 2. Before any contract made for or by any state department, board, officer, commission, or institution, shall be executed or become effective, when such contract exceeds one thousand dollars in amount * * * it shall first be approved by the comptroller and filed in his office. Whenever any liability of any nature shall be incurred by or for any state department, board, officer, commission, or institution, notice that such liability has been incurred shall be immediately given in writing to the state comptroller.”
This section replaced section 37 of the State Finance Law of 1909. In an opinion rendered by the Attorney-General in-1910, the provisions of this section 37 (now 112) were determined to be not applicable to the State Fair Commission (presently State Exposition). (1910 Atty. Gen. 401.)
Section 102 of the State Finance Law must also be taken into consideration. This section refers to the direction that unpaid checks are to be paid into the general fund. In an opinion by the Attorney-General in 1962, it was concluded that checks issued by the Division of the State Fair against State Fair receipts which are unpaid and have remained outstanding for three years are required to be paid into the State treasury pursuant to this section. (1962 Atty. Gen. 13.)
In analyzing these three sections the conclusion must be reached, first, that the provisions of section 112 of the State Finance Law do not affect the financial transactions of the State Exposition; second, that the control of moneys within the State Exposition is defined by the provisions of section 31-c of the Agriculture and Markets Law, and third, that moneys left undistributed in the control of the State Exposition are to be transferred to the general fund within three years of their nondistribution. (Brockway v. State of New York supra.)
*53 Statutes relative to finances must be strictly construed. Even though the exposition might have prevented the instant situation by adopting requirements relative to finances similar to those established by the Comptroller in accordance with the State Finance Law, it has, in this instance, the responsibility to comply Avith the arrangement or contractual relationship hereinbefore described.
Accordingly, the defendant is found liable for breach of employment contract. Applying the principle of quantum meruit, the value of the services rendered by the claimant is determined to be the amount of $1,000.
Thus, the claimant is awarded the sum of $1,000.
The motions made by the defendant at close of claimant’s proof and at the conclusion of the entire case, upon which decision was reserved, are now denied.